United States District Court
Southern District of Texas

**ENTERED**

June 30, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARCO  GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-440 |
| | § | |
| MANUEL  CASTRO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

BE IT REMEMBERED that June 30, 2016 the Court on **DENIED AS MOOT** first motion to dismiss; **DENIED** Defendants' motion to dismiss; and **GRANTED IN PART** and **DENIED IN PART** Defendants' Opposed Motion for Protective Order.

## I.    Background

This case arises from an incident that occurred at the office of the Texas Department of Public Safety, Driver's License Division, on December 6, 2013. Second Am. Compl., Dkt. No. 8 ¶ 16.  Plaintiff Marco Garcia ("Garcia") alleges that he was standing in line when he was approached by Defendants Manual Castro, Orlando J. Garcia, John M. Kopacz, Richard Russell, Henry J. Schultz, IV, Eric Walters, Clayton Cohea, Jeffrey Smithwick, Francisco Hosking, and Charley Howell (collectively referred to as "Officer Defendants").  *Id.*  Officer Defendants asked Garcia if he was a man named "Jose Sifuentes," and Garcia told them that he was not.  *Id.*  Garcia claims that Officer Defendants, without warning, then "grabbed [him], shoved him to the ground, stood on top of him, handcuffed him, and forcibly removed him out of the room."  *Id.*  As a result of this alleged assault, Garcia states that he suffered serious bodily injuries to various areas, including his wrists, shoulders, head, neck, and back.  *Id.*  Garcia alleges that the man sought by Officer Defendants was standing the adjacent line.  *Id.*  When Officer Defendants realized their error, Garcia claims that the suspect was arrested with little force.  *Id.*

Garcia's complaint asserts a cause of action under the Texas Tort Claims Act ("TCA" or the "Act") against Defendant Texas Department of Public Safety (the "Department"), a Texas entity.  Dkt. No. 8 ¶¶ 2, 18–25.  Garcia alleges that the Department negligently issued law enforcement equipment to Officer Defendants, who were not properly trained to identify the correct suspect named in the arrest warrant.  Dkt. No. 8 ¶ 19.  Garcia further claims that the Department's acts and/or omissions constitute gross negligence as defined under Texas Civil Practice and Remedies Code § 41.001(11).  Dkt. No. 8 ¶ 22.  Garcia invokes the doctrine of respondeat superior alleging that Officer Defendants were acting within the course and scope of their employment with the Department.  Dkt. No. 8 ¶¶ 23–25.  Under 42 U.S.C. § 1983, Garcia pleads a violation of his Fourth Amendment rights against Officer Defendants.  Dkt. No. 8 ¶¶ 26–29.

On October 16, 2015, Officer Defendants and the Department (collectively referred to as "Defendants") filed their first motion to dismiss.  Dkt. No. 3.  On November 2, 2016, Garcia filed his Second Amended Complaint, Dkt. No. 8, and a response to the motion to dismiss, Dkt. No. 10.  Defendants filed a second motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c).  Dkt. No. 13.  Garcia filed a supplemental response to Defendants' motion to dismiss, which the Court reads as a response to Defendants' second motion to dismiss.  Dkt. No. 14.  After the Court entered a scheduling order in the case, Defendants filed an Opposed Motion for Protective Order with Brief in Support.  Dkt. No. 20.  Garcia responded in opposition to Defendants' motion for a protective order.  Dkt. No. 21.

## II.    Legal Standards

### A.    12(b)(1) Motion

A party may move for dismissal based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(1).  "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice."  *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Article III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (citing *Ex parte State of New York No. 1*, 256 U.S. 490, 497 (1921)).

In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When the defendant advances a "facial" attack under Rule 12(b)(1), "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Here, Defendant's motion is unaccompanied by supporting evidence, so the Court examines whether the allegations in the pleadings, which are assumed to be true, are sufficient to invoke the court's subject matter jurisdiction.

### B.  12(b)(6) Motion

Federal Rule of Civil Procedure 12(b)(6) states that a plaintiff's claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to be sufficient, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In evaluating a plaintiff's complaint in light of a defendant's motion to dismiss under Rule 12(b)(6), a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." *Iqbal*, 556 U.S. at 679.   Then the court may determine whether the plaintiff's well-pleaded facts allow the court to infer the plausibility of misconduct. *See id.* "Factual allegations must be enough to raise a right to relief above a speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   *Twombly*, 550 U.S. at 555 (internal citations omitted).

### C.   12(c) Motion

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   A Rule 12(c) motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008).   "The Court must limit its inquiry to facts stated in the complaint and documents either attached to or incorporated into the complaint."   *Kiper v. BAC Home Loans Servicing, L.P.*, 884 F. Supp. 2d 561, 567 (S.D. Tex. 2012) (citing *Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012)).

## III.   Analysis

### A.   Motion to Dismiss

#### 1.   Sovereign Immunity

Under the doctrine of sovereign immunity, government entities are immune from liability for the negligence of their employees.   *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).   By removing a lawsuit from state court to federal court, the state waives its Eleventh Amendment immunity from suit.   *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623–24 (2002) ("[T]he rule is a clear one . . . It says that removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum."). Defendants removed the suit from Nueces County Court of Law on October 16, 2015.   Dkt. No. 1.   Thus, the Department waived its immunity from suit by

removing this action from state court to this Court.  Nonetheless, the Fifth Circuit has recognized that state law may prescribe the scope of immunity that a state may retain after its waiver of immunity from suit.  *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 253 (5th Cir. 2005) (concluding that "the Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect it enjoyment of the other").

The TCA states, "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.  A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter."  Tex. Civ. Prac. & Rem. Code § 101.025(a)–(b) (2015).  Claims alleging intentional torts are not subject to the waiver of sovereign immunity.  *See* § 101.057(2) ("This chapter does not apply to a claim arising out of assault, battery, false imprisonment, or any other intentional tort.").  The Act waives immunity in limited situations when an officer negligently carried out governmental policy.  *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)); *State v. Terrell*, 588 S.W.2d 784, 788 (Tex. 1979).  Garcia alleges that the Department is liable under the following provision of the Act, "A governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."  Tex. Civ. Prac. & Rem. Code § 101.021(2).

The Supreme Court of Texas has held that information is not tangible property because it is "an abstract concept that lacks corporeal, physical, or palpable qualities."  *Petta*, 44 S.W.3d at 580 (citing *York*, 871 S.W.2d at 179).  Even when information is reduced to writing on paper, Texas courts have refused to conclude that the information is tangible property.  *See Dallas Cty. v. Harper*, 913 S.W.2d 207, 208 (Tex. 1995) (per curiam) (concluding that an indictment was "no more than a grand jury's pronouncement reduced to writing" and was therefore not tangible personal property entitling the plaintiff to maintain a suit under the TCA);

*York*, 871 S.W.2d at 176 ("While paper itself can be touched, handled, and seen, medical information recorded on paper is not tangible personal property. The State has not waived immunity from liability for negligence involving the use, misuse, or nonuse of medical information.").

Courts have recognized a distinction between information merely reduced to writing and tangible property utilized in the commission of the alleged conduct. The plaintiff in *Petta* alleged that she was assaulted by a state trooper during a traffic stop and brought a claim under the TCA alleging that the Texas Department of Public Safety negligently trained and supervised the trooper. 44 S.W.3d at 577. The Texas Supreme Court determined that training manuals, which contained information relevant to the plaintiff's claim, did not constitute tangible personal property for the purpose of bringing a claim under the Act. *Id.* at 581. The court therefore concluded that sovereign immunity was not waived for the plaintiff's claims. *Id.* By contrast, the plaintiff in *Russell* alleged that she was sexually assaulted by a police officer while being transported to jail for an unpaid traffic ticket. *Russell v. City of Houston*, 808 F. Supp. 2d 969, 971 (S.D. Tex. 2011) (Werlein, J.). The district court determined that the officer's badge, police uniform, gun, handcuffs, communication devices and/or car constituted tangible personal property that would cause the state to waive its sovereign immunity under the TCA. *Id.* at 973–74. The court analogized the allegations to negligent entrustment cases. *Id.* at 974. Acknowledging that such claims ultimately require proof of the defendant's requisite knowledge of the entrustee's incompetency, the court determined that the plaintiff, at the motion-to-dismiss stage, need only allege sufficient facts to support her claim. *Id.* at 975.

Defendants argue that the Department is immune from suit and liability under the Eleventh Amendment and that the Department has not waived its sovereign immunity. Dkt. No. 13 at 2–3. In a footnote, the Department acknowledges that removal from state to federal court waives the state's Eleventh Amendment immunity from suit, but it claims that it still retains its sovereign immunity. Dkt. No. 2 at 13 n.1. The Department argues that Garcia cannot allege

both negligence and a violation of his constitutional rights via § 1983.  Dkt. No. 13 at 2.  The Department urges the Court to dismiss the claims brought under the TCA because the Act does not waive sovereign immunity for intentional tort claims, and Garcia's claim arises from an alleged assault.  Dkt. No. 13 at 3.  Defendants further argue that the information contained in policies and training materials is not tangible personal property, a requirement for a waiver of immunity under the negligence provision of the TCA.  Dkt. No. 13 at 3.

Garcia responds by clarifying the distinct claims filed against the Department and Officer Defendants.  Dkt. No. 21.  Garcia alleged a claim under the TCA against the Department and pled a § 1983 claim only against Officer Defendants.  *See* Second Am. Compl., Dkt. No. 8.  Citing to *Russell*, Garcia argues that he can maintain a negligence action against the Department based on its allegedly negligent issuance of tangible property to Officer Defendants.  Dkt. No. 14 at 7–9.  Garcia claims that the Department waived its immunity under the TCA through this alleged negligent conduct.  Dkt. No. 14 at 12–14.  In rebutting Defendants' characterization of Garcia's claims, Garcia argues that he properly asserted a § 1983 claim against Officer Defendants based on their alleged assault of Garcia following their mistaken identification of Garcia as the individual subject to the warrant.  Dkt. No. 14 at 15–17.

The Court finds that Garcia's complaint sufficiently pleads a negligence claim under the Act to assert a claim against the Department.  Garcia does not bring an intentional tort claim against the Department; rather, he alleges that the Department "negligently issued law enforcement equipment to its officers, who were not properly trained on how to identify the correct suspect listed in an arrest warrant."  Dkt. No. 8 ¶ 9.  Garcia may pursue a negligence claim against the Department alleging that its conduct caused Garcia's alleged assault, despite the statutory provision barring claims for intentional torts.  *See Russell,* 808 F. Supp. 2d at 972; *see also Jefferson Cty. v. Sterk*, 830 S.W.2d 260, 261–63 (Tex. App. Beaumont—1992) (pet. denied) ("[T]he fact that an action for an intentional tort is barred does not prevent an injured party from pursuing a claim for simple

negligence arising out of the same facts."). Similar to *Russell*, Garcia's claims against the Department do not arise out of allegations of intentional conduct but rather out of the Department's negligent issuance of tangible property to Officer Defendants, property allegedly used to commit the assault against Garcia. *See Russell*, 808 F. Supp. 2d at 973–74; *Centamore v. City of Houston*, 9 F. Supp. 2d 717, 725 (S.D. Tex. 1997) (Atlas, J.) (concluding that a plaintiff's claims that the Houston Police Department negligently provided an officer the tangible property that gave the officer "the opportunity, means, and private location" for his sexual assault did not arise out of an intentional tort).

Garcia argues that "equipment" in this case includes "handcuffs and other law enforcement equipment" used by Officer Defendants during Garcia's arrest and alleged assault. Dkt. No. 14 at 11–12. Although Garcia does not specify the other forms of "law enforcement equipment" or how the handcuffs were used to carry out the alleged assault, at this stage in the proceeding, the Court examines the allegations in the light most favorable to Garcia. Unlike the plaintiff in *Petta* who referred only to training materials that the court held were not tangible personal property, Garcia pleads that the equipment itself, not just training materials, was negligently issued to Officer Defendants who utilized this equipment to carry out the alleged assault. Dkt. No. 8 ¶ 19.

Furthermore, in a two-sentence section, Defendants argue that Garcia's allegations against the Department cannot stand because a state or its agencies are not "persons" for the purposes of bringing a claim for violation of constitutional rights. Dkt. No. 13 at 4. Garcia did not assert a constitutional claim against the Department. Thus, this argument is not relevant to the Department's waiver of immunity as it relates to Garcia's TCA claim.

The Court finds that Garcia has sufficiently pled a claim for negligence against the Department under the Act such that the Department has waived immunity under the Act. The Court therefore **DENIES** Defendants' motion to dismiss.

2.      Claims against Officer Defendants

Defendants advance a similar argument as to Garcia's claims against Officer Defendants and state that Garcia cannot bring a § 1983 claim and negligence claim arising from the same facts.  Dkt. No. 13 at 4.  Defendants state that Garcia's allegations must be limited either to a theory of negligence or a theory of intentional assault, thus invoking § 1983, but he cannot do both.  Dkt. No. 13 at 4.  In response, Garcia argues that plaintiffs in similar cases have been permitted to bring claims under both the TCA and section 1983.  Dkt. No. 14 at 20–22.  Garcia alternatively argues that he should be given the opportunity to amend his pleadings, if the Court determines that Garcia's pleadings do not establish jurisdiction.  Dkt. No. 14 at 21.

Having determined that Garcia sufficiently pled a negligence claim under the TCA against the Department, the Court finds that Defendants have failed to specify a basis for dismissing claims against Officer Defendants, other than their unsupported assertion that a plaintiff must choose between advancing an intentional tort or negligence claim.  Other courts have permitted plaintiffs to advance state law claims along with § 1983 claims.  *See, e.g.*, *Texas Dep't of Aging & Disability Serv. v. Cannon*, 453 S.W.3d 411, 419 (Tex. 2015) (permitting the plaintiff to assert claims against the state entity under the TCA and § 1983 claims against the individual employee-defendants).

The Court therefore **DENIES** Defendants' motion to dismiss Garcia's claims against Officer Defendants.


B.      Motion for Protective Order

In their motion for a protective order, Defendants state that the officers pled qualified immunity in their Answer.[1]  Dkt. No. 20 at 2.  Officer Defendants object to

---

[1] The Court notes Defendants did not file an amended answer in response to Garcia's Second Amended Complaint.  Federal Rule of Civil Procedure 15(a) states that a party may amend its pleading once as a matter of course within "21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(A), (B).  Defendants removed this case on October 16, 2016.  Dkt. No. 1.  Defendants filed an answer and motion to dismiss that same day.  Dkt. Nos. 2, 3.  Garcia timely filed a second amended complaint on

any discovery requests on the ground that they prematurely require them to engage in discovery before the Court has ruled on their entitlement to immunity from suit. Dkt. No. 20 at 2. In their motion for a protective order, Defendants request that the Court stay discovery until it has ruled on its qualified immunity defense. Dkt. No. 20 at 2–3. Defendants' motion to dismiss, however, is limited to its arguments concerning sovereign immunity. Interpreting Defendants' motion for a protective order as applying only to the immunity defense arguments raised in Defendants' motion to dismiss, Garcia argues only that he should be allowed to conduct discovery as to issues related to the Department's immunity defense. Dkt. No. 21 at 5–7. Garcia further states that Officer Defendants are not immune from all discovery just because they assert a qualified immunity defense. Dkt. No. 21 at 4.

Qualified immunity is not just immunity from liability, but also "immunity from suit," thus freeing entitled defendants to be free from the burdens of having to defend the litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Under Federal Rule of Civil Procedure 8, a defendant must "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)). "[F]air notice" is satisfied if the affirmative defense is "sufficiently articulated . . . so that the plaintiff [is] not a victim of unfair surprise." *Woodfield*, 193 F.3d at 362. In some cases, "merely pleading the name of the affirmative defense . . . may be sufficient." *Id.*; *see also Am. Motorists Ins. Co. v. Napoli*, 166 F.2d 24, 26 (5th Cir. 1948) (determining that a plea that simply states that the plaintiff was guilty of contributory negligence is sufficient in a negligence action).

In *Schultea v. Wood*, the Fifth Circuit determined that the district court has wide discretion in handling the pleadings and discovery stages in § 1983 litigation

---

November 2, 2015. Dkt. No. 8. Defendants' original answer asserts the affirmative offense of qualified immunity in one sentence, "[Officer Defendants] file this answer denying Garcia's allegations, asserting their entitlement to qualified immunity and demanding a jury." Dkt. No. 2 at 1. Beyond this single reference to qualified immunity, Defendants do not present this defense in an amended answer nor in their motion to dismiss.

where the defendants raise the affirmative defense of qualified immunity.  47 F.3d
1427, 1433–34 (5th Cir. 1995) (en banc).    The court stated,

> When a public official pleads the affirmative defense of qualified
> immunity in his answer, the district court may, on the official's motion
> or on its own, require the plaintiff to reply to that defense in detail. By
> definition, the reply must be tailored to the assertion of qualified
> immunity and fairly engage its allegations.

*Id.* at 1433.

The Court declines to rule on whether Officer Defendants are entitled to
qualified immunity or whether Officer Defendants have properly pled the
affirmative defense of qualified immunity without Plaintiff having the opportunity
to address this issue.  Pursuant to *Schultea*, the Court **ORDERS** Garcia to file a
reply to Officer Defendants' qualified immunity defense.

Defendants further request a protective order to limit discovery as to the
Department until the Court rules on the motion to dismiss.  Dkt. No. 20 at 4.  The
Court has denied Defendants' motion to dismiss on sovereign immunity grounds.
Thus, there is no reason to limit discovery against the Department.   Accordingly,
the Court **ORDERS** the parties to proceed with discovery as to the claim under the
TCA against the Department and to proceed with discovery limited to the issue of
qualified immunity as to Officer Defendants.  Thus, the Court **GRANTS IN PART**
and **DENIES IN PART** Defendants' Motion for a Protective Order.

## IV.    Conclusion

For the foregoing reasons, the Court

- **DENIES AS MOOT** first motion to dismiss;
- **DENIES** Defendants' motion to dismiss;
- **GRANTS IN PART and DENIES IN PART** Defendants' Opposed Motion
  for Protective Order, Dkt. No. 20; and

- **ORDERS** Plaintiff to file a brief addressing Officer Defendants' affirmative defense of qualified immunity within twenty-one days following entry of this order.

SIGNED this 30th day of June, 2016.

Hilda Tagle
Senior United States District Judge