# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARCO GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-440 |
| | § | |
| MANUEL CASTRO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that on July 11, 2017 the Court **GRANTED** Defendants' Motion to Dismiss, Dkt. No. 42; **DENIED** Plaintiff's Opposed Motion for Leave to File a Third Amended Complaint, Dkt. No. 49; **GRANTED IN PART AND DENIED IN PART** Defendants' Opposed Motion to Strike Plaintiff's Expert, Dkt. No. 52; **STRUCK AS MOOT** Defendants' Motion for Summary Judgment, Dkt. No. 55; **STRUCK AS MOOT** Plaintiff's Objection to Summary Judgment and Opposed Motion for Continuance, Dkt. No. 58; **GRANTED** Plaintiff's Motion for Leave to Exceed Page Limitations, Dkt. No. 59; and **STRUCK AS MOOT** the parties' joint motion for a continuance, Dkt. No. 63.

### I. Background

This case arises from an incident that occurred at the office of the Texas Department of Public Safety, Driver's License Division, on December 6, 2013. Dkt. No. 8 [hereinafter "Pl.'s Second Am. Compl."] ¶ 16. On this date, Plaintiff Marco Garcia ("Garcia") alleges he was standing in line when he was approached by Defendants Manual Castro, Orlando J. Garcia, John M. Kopacz, Richard Russell, Henry J. Schultz, IV, Eric Walters, Clayton Cohea, Jeffrey Smithwick, Francisco Hosking, and Charley Howell (collectively referred to as "Officer Defendants"). *Id.* According to Garcia, Officer Defendants asked Garcia if he was a man named "Jose Sifuentes," and Garcia told them that he was not. *Id.* Garcia claims that Officer

Defendants, without warning, then "grabbed [him], shoved him to the ground, stood on top of him, handcuffed him, and forcibly removed him out of the room." *Id.* As a result of this alleged assault, Garcia states that he suffered serious bodily injuries to various areas, including his wrists, shoulders, head, neck, and back. *Id.* Garcia alleges that the man sought by Officer Defendants was standing in an adjacent line to Garcia when he was approached by Officer Defendants, and that this suspect was arrested with little force when Officer Defendants realized their error. *Id.*

Garcia's complaint asserts a cause of action under the Texas Tort Claims Act ("TCA" or the "Act") against Defendant Texas Department of Public Safety (the "Department"), a Texas entity. Pl.'s Second Am. Compl. ¶¶ 2, 18–25. Garcia alleges that the Department negligently issued law enforcement equipment to Officer Defendants. *Id.* ¶ 19. Garcia further claims that the Department's acts and/or omissions constitute gross negligence as defined under Texas Civil Practice and Remedies Code § 41.001(11). *Id.* ¶ 22. Garcia invokes the doctrine of respondeat superior to support these claims, alleging that Officer Defendants were acting within the course and scope of their employment with the Department. *Id.* ¶¶ 23–25. Additionally, under 42 U.S.C. § 1983, Garcia pleads a violation of his Fourth Amendment rights against Officer Defendants. *Id.* ¶¶ 26–29.

Pursuant to Garcia's claims under the TCA, on June 30, 2016 the Court held that by removing this action to federal court, the Department waived its sovereign immunity as to Garcia's negligence claim against it. *See* Dkt. No. 22. In particular, the Court found Garcia's allegation that the Department "negligently issued law enforcement equipment to its officers could lie, despite the TCA's statutory provision barring claims for intentional torts." *Id.* at 7. This finding was based on the Court's reasoning that Garcia had sufficiently alleged the Department negligently issued tangible personal property to Officer Defendants—including "handcuffs and other law enforcement equipment" Garcia alleges they used to commit assault against him. *Id.*

Pursuant to Garcia's § 1983 claims, on June 16, 2016 the Court ordered the parties to submit *Schultea* briefs addressing Officer Defendants' entitlement to the

affirmative defense of qualified immunity. Dkt. No. 22; *see Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995). On January 19, 2017, after review of these briefs and additional relevant pleadings, the Court found that Officer Defendants, as a matter of law, are entitled to qualified immunity with respect to the § 1983 claims against them. Dkt. No. 41. Subsequently, on January 20, 2017, Officer Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(c), on the basis of qualified immunity. Dkt. No. 42.

Garcia responded to this motion on February 17, 2017 Dkt. No. 48, and on this same date filed an opposed motion to file a third amended complaint, Dkt. No. 49. On March 9, 2017, Defendants filed an opposed motion to strike the testimony of an expert whose affidavit Garcia attached to his response to Officer Defendants' motion to dismiss, Dkt. No. 52, and on April 6, 2017 they filed a motion for summary judgment against Garcia, Dkt. No. 55. Garcia filed a response and an objection to this summary judgment motion on May 10, 2017, Dkt. No. 60, along with an opposed motion for continuance, Dkt. No. 58. On July 6, 2017, the parties jointly filed a motion for continuance and requested cancellation of the joint pretrial conference scheduled in this case pending the Court's resolution of Defendants' motion for summary judgment. Dkt. No. 63.

## II. Pending Motions

### a. Officer Defendants' Motion to Dismiss, Motion to Strike Plaintiff's Expert, and Garcia's Motion for Leave to File Third Amended Complaint

In its previous Order addressing Officer Defendants' affirmative defense of qualified immunity, the Court found that Garcia's constitutional rights were not violated by Officer Defendants' conduct when, as Garcia alleges, they "grabbed [him], shoved him to the ground, stood on top of him, handcuffed him, and forcibly removed him" from a public waiting area at the Texas Department of Public Safety, Driver's License Division. *See* Dkt. No. 41. Specifically, the Court found that Officer Defendants' conduct did not constitute an objectively unreasonable and excessive

use of force under the Fourth Amendment, citing to: (i) the brevity of Officer Defendants' interaction with Garcia, consisting of "the moments where he was restrained, 'tackled to the ground', and handcuffed"; (ii) the severity of the crime—murder—Officer Defendants suspected Garcia of; (iii) the risk to public safety posed by the public space where they encountered him, and (iv) the absence of any allegation from Garcia that Officer Defendants used weapons, threats, or unsanctioned maneuvers in restraining him. *Id.*

In their motion to dismiss, Officer Defendants simply ask the Court to dismiss Garcia's claims against them pursuant to this finding on qualified immunity, and in their reply brief argue that the substance of Garcia's response to this motion should not alter the Court's analysis. Dkt. No. 42. Garcia's response effectively re-urges the qualified immunity arguments offered in his *Schultea* brief, with a few modifications. Notably, in his response Garcia offers new evidence as to the severity of the injuries he alleges he suffered as a result of Officer Defendants' conduct, Dkt. No. 48, Ex. 1, and a new allegation that "[a]fter he was handcuffed, the Officer Defendants yanked Garcia up using the handcuffs," Dkt. No. 48 at 10. Garcia argues that this act was "an unsanctioned maneuver which violated nationally known and accepted police procedures." Dkt. No. 48 at 10. Garcia also incorporates this new evidence and allegation in his proposed third amended complaint, which he argues is necessary "to better elucidate" his § 1983 claims, especially since "the issue of qualified immunity was not raised by the Court or the Officer Defendants" until an initial deadline for amending pleadings passed early in this litigation. Dkt. No. 48 at 8.

For clarity of record, the Court notes that Officer Defendants raised the affirmative defense of qualified immunity in their original answer. *See* Dkt. No. 1; Dkt. No. 22 at 9, n.1. Additionally, the Court's order requiring Garcia to submit a brief on qualified immunity under *Schultea* put him on notice that his pleadings were required to "state with factual detail and particularity the basis for [his] claim[s] which necessarily includes why [a] defendant-official cannot successfully

maintain the defense of immunity." *McPeters v. Edwards*, 806 F.Supp.2d 978, 983 (S.D. Tex. 2011) (quoting *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citations omitted)). Nevertheless, after the deadline for amending pleadings as of right has passed, courts should "freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Gonzalez v. Bayer Healthcare Pharmaceuticals, Inc.*, 930 F.Supp.2d 808, 811-812 (S.D. Tex. 2013) ("When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.") Still, "[i]t is within the district court's discretion to deny a motion to amend if it is futile," meaning "that the amended complaint would fail to state a claim upon which relief could be granted." *McPeters*, 806 F.Supp.2d at 992 (quoting *Stripling v. Jordan Production Co., LLC,* 234 F.3d 863, 872–73 (5th Cir. 2000)).

Specifically, if a "proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face," the court should deny leave to amend. *Davidson v. JP Morgan Chase, N.A.*, No. 4:13-CV-3698, 2014 WL 4924128, at *4 (S.D. Tex. Sept. 29, 2014) (quoting 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Proc. § 1487 (2d ed. 1990)). In making this assessment, a court must determine "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief," *id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)); that is, the court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)," *id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

Here, the Court finds that Garcia's proposed amendment fails to state a claim sufficient to overcome Officer Defendants' affirmative defense of qualified immunity, and would be futile. Garcia's heightened allegation that Officer Defendants "jerk[ed] him to his feet by the handcuffs" and his new use of specific pleading language referencing their alleged use of "unsanctioned maneuvers"—present in both his response to Officer Defendants' motion to dismiss and his

proposed third amended complaint, *see* Dkt. No. 49-1 at 4; Dkt. No. 48 at 10—only superficially address the Court's analysis in its January 17, 2017 Order as to whether Officer Defendants are entitled to qualified immunity. Further, they are contradicted by videotape of Garcia's arrest, and statements made in his own deposition testimony. *See* Dkt. No. 48-2, Exs. C, D.

Again, whether Office Defendants can avail themselves of qualified immunity depends on whether their "'conduct violated a constitutional right,'" and "'whether the right was clearly established at the time of the conduct.'" *Gehring v. Harris County*, 2016 WL 269620 at *7 (S.D. Tex. Jan. 21, 2016). In its prior Order the Court addressed only the first prong of this inquiry, as is its right. *See Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Under the Fourth Amendment, Officer Defendants will have violated Garcia's constitutional rights if Garcia can show he suffered an injury, that resulted directly and only from an excessive use of force, which was objectively unreasonably given the circumstances. *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). While the Court acknowledges Garcia has alleged certain injuries he claims were caused by Officer Defendants' conduct, Garcia's allegations as to what this conduct entailed do not plausibly suggest that Officer Defendants used objectively unreasonably and excessive force against him.

First, the most serious injury Garcia has (newly) alleged is "bilateral separated shoulders," which he claims to have suffered as a result of Officer Defendants' "yanking" him up by the handcuffs as they arrested him.[1] Dkt. No. 48

---

[1] In support of his injury claim, Garcia attaches to his response to Officer Defendants' motion to dismiss the affidavit of Dr. Dennis Gutzman, his treating physician. *See* Dkt. No. 48-1, Aff. of Gutzman. Defendants have filed an opposed motion to strike Gutzman's testimony pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), which requires, inter alia, witnesses "retained or specially employed to provide expert testimony in the case" to provide a report meeting certain qualifications." Fed. R. Civ. P. 26(a)(2)(B). They argue that as Gutzman's affidavit "contains opinions regarding the cause of Garcia's alleged injury," Gutzman is a witness providing evidence, bound to comply with Rule 26(a)(2)(B). Dkt. No. 52 at 2. Garcia counters that as a "non-retained expert witness" and Garcia's treating physician Gutzman was not required to file a report pursuant to Rule 26(a)(2)(B). *See* Dkt. No. 54. To the extent that Gutzman's affidavit expounds on "facts disclosed during care and treatment of the patient," the Court agrees with Garcia that such testimony is not barred by Gutzman's failure to submit a timely report under Rule 26(a)(2)(B). *See Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008) (quoting *Brown v. Best Foods, A Division of CPC Intern., Inc.,* 169 F.R.D. 385, 389 (N.D. Ala. 1996). The Court will disregard, however, testimony contained in

at 10-11. This injury, which Garcia alleges is "a permanent injury which will continue to bother him throughout his life," *id.*, could, in the right fact-bound context, support an excessive force claim.[2] Yet, as the Court observed in its January 19, 2017 Order, Garcia was arrested on suspicion of murder, in a populated public space—while the interaction with Officer Defendants he complains of lasted no more than one minute, and was devoid of the kind of aggravating circumstances (such as the brandishing of any weapon or the use of threats) that might clearly support an excessive force claim. *See* Dkt. No. 41 at 7. Additional evidence and argumentation provided by Garcia in support of his opposition to Officer Defendants' motion to dismiss do not disturb this analysis.

For instance, a video of his arrest that Garcia has newly provided (*see* Dkt. No. 48-2, Ex. C) tracks surveillance photographs the Court considered before issuing its January 19, 2017 Order (*see* Dkt. No. 26, Ex. A), and only serves to support the Court's prior finding that certain claims Garcia alleged in his initial pleadings are not evident in the documentary record of his interaction with Officer Defendants. Specifically, the surveillance video does not suggest that Officer Defendants 'struck', 'pummeled', 'abused', or 'beat' Garcia during his arrest, nor that any one officer 'stood' on him. *See id.*; Dkt. No. 41 at 6-8; Dkt. No. 49-1. Additionally, in his own deposition testimony Garcia was not able to state that he was punched or kicked by any officer. Dkt. No. 48-2 at 47-48. Neither did he testify,

---

Gutzman's affidavit as to the cause of Garcia's injuries, including testimony based on surveillance video of Garcia's interaction with Officer Defendants. *See id.* at 504 (holding that testimony "not sufficiently related to the doctor's 'personal knowledge and observations obtained during the course of care and treatment' or that was not 'formulated during the course of treatment,'" would require a written report under Rule 26(a)(2)(B)). Admission of this testimony would unfairly prejudice Defendants, and Garcia has not sufficiently explained why this testimony was not included in his *Schultea* brief, which offered him an opportunity to fully explore the issues of qualified immunity Garcia argues Gutzman's testimony speaks to. Dkt. No. 54 at 6.

[2] No injury is per se too *de minimis* to support an excessive force claim, but as the Court noted in its January 19, 2017 Order, "the amount of injury necessary to . . . establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 101 F.3d 430, 434-35; *also compare, e.g., Tarver v. City of Edna*, 410 F.3d 745, 751-53 (5th Cir. 2005) (finding rough handcuffing not motivated by malice or an intent to harm and resulting in *de minimis* contusions did not constitute excessive force) with *Deville v. Marcantel*, F.3d 156, 168-69 (5th Cir. 2009) (finding wantonly reckless handcuffing resulting in neuropathy in hands and fingers, four surgeries and over three months of missed work could support excessive force claim).

as his proposed third amended complaint suggests, that after Officer Defendants handcuffed him he was 'jerked to his feet by his handcuffs'. *See* Dkt. No. 49-1 at 4. Instead, Garcia's testimony was that he was "flung up" from the ground, and "pulled up" by his "arm/shoulder area." Dkt. No. 48-2 at 48. This testimony, in turn, better approximates the conduct depicted in surveillance video. *See* Dkt. No. 48-2, Ex. C. "Although courts must construe evidence in light most favorable to the nonmoving party, [they] will not adopt a plaintiff's characterization of the facts where unaltered video evidence contradicts that account." *Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

For the foregoing reasons, the Court declines to reconsider its earlier holding that Officer Defendants are entitled to qualified immunity, and therefore **GRANTS** their motion to dismiss, Dkt. No. 42. Additionally, the Court **DENIES** Garcia's motion for leave to file a third amended complaint, Dkt. No. 49, finding that such amendment would be futile.[3]

### b. The Jurisdictional Effect of Officer Defendants' Entitlement to Qualified Immunity

Officer Defendants and the Department have jointly moved for summary judgment on Garcia's § 1983 claims and claims under the Texas Tort Claims Act, respectively. Dkt. No. 55. As the Court has dismissed Garcia's § 1983 claims pursuant to Officer Defendants' motion to dismiss, only the Department's summary judgment claims under the TCA remain pending. Yet Defendants argue, and Garcia does not appear to dispute, that if Officer Defendants are entitled to qualified immunity, under Texas law they are also entitled to official immunity and the Department is per se protected by sovereign immunity. Dkt. No. 55 at 14; Dkt. No. 60 at 20-21. If so, this Court cannot proceed to decide Defendants' motion for summary judgment on the merits, as "[Eleventh Amendment] sovereign immunity deprives [a] court of jurisdiction[.]" *Warnock v. Pecos County, Texas*, 88 F.3d 341,

---

[3] Although Garcia's proposed third amended complaint also includes claims against the Department under the Texas Tort Claims Act, his response to Defendants' motion for summary judgment notes that this proposed complaint merely restates the same allegations pled in his second amended complaint. *See* Dkt. No. 60 at 22, n. 81.

343 (5th Cir. 1996); *see also John G. & Marie Stella Kenedy Mem'l Found. V. Mauro*, 21 F.3d 667 (5th Cir. 1994).

The Court has found that Officer Defendants are entitled to qualified immunity with respect to their interaction with Garcia at the Texas Department of Public Safety on December 6, 2013. Meanwhile, it is undisputed by the parties that under Texas law, police officers "are entitled to official immunity from suits arising out of performance of (1) discretionary duties (2) in good faith as long as they are (3) acting within their authority." *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 280 (5th Cir. 2001) (quoting *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994)). Good faith is the only prong of this test Garcia challenges Defendants cannot satisfy. *See* Dkt. No. 60 at 21. "To establish good faith, [an officer] must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002). Accordingly, "Texas law judges an officer's good faith under the same test federal courts employ for qualified immunity determinations under § 1983." *Mowbray*, 274 F.3d 269; *see also Texas Dept. of Public Safety v. Rodriguez*, 344 S.W.3d 483, 488 at n.1 (Tex.App.–Houston 2011, no pet.). Therefore, pursuant to the Court's qualified immunity finding, Officer Defendants are entitled to official immunity under Texas law.

Under the TCA, in turn, "whether [a] governmental employee is entitled to official immunity may affect whether the [TCA's] limited waiver of sovereign immunity is applicable." *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). In its June 30, 2016 Order, this Court held that "the Department waived its [Eleventh Amendment] immunity from suit by removing this action from state court," but also recognized that "state law may prescribe the scope of immunity that a state may retain after its waiver of immunity from suit." Dkt. No. 22 at 4-5. While claims alleging intentional torts are not subject to the waiver of sovereign immunity under the TCA, "[a] governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the

governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). It is this provision Garcia invokes in alleging that the Department negligently issued tangible personal property consisting of "handcuffs and other law enforcement equipment" to Officer Defendants—property he claims was later used to commit an assault against him. Dkt. No. 22 at 8. Before deciding the issue of qualified immunity in this case, the Court found that Garcia had sufficiently pled a claim for negligence against the Department under the TCA. *See* Dkt. No. 22 at 8. Yet because Garcia's cause of action under the TCA relies on language providing for government liability under the doctrine of *respondeat superior*, it can be foreclosed if Officer Defendants have an affirmative defense to liability. *See Hutchison v. Brookshire Bros., Ltd.*, 205 F.Supp.2d 629, 646 (E.D. Tex. 2002) ("Section 2 has been interpreted to mean that the government, 'were it a private person . . . would be entitled to assert any affirmative defenses its employee has to liability.'")

As the Court recognized in its June 30, 2016 Order, under Texas law, "the fact that an action for an intentional tort is barred does not prevent an injured party from pursuing a claim for simple negligence arising out of the same facts." *Jefferson Cty. v. Sterk*, 830 S.W.2d 260, 261-63 (Tex.App. Beaumont–1992) (pet. denied). Here, however, no matter how Garcia attempts to construe his claims, sovereign immunity will bar them as a result of Officer Defendants' official immunity. The TCA contemplates the waiver of certain immunity a governmental unit might otherwise avail itself of with respect to a specific injury. *See Leleaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). Thus, in assessing whether the Department's liability for Garcia's injuries has been waived pursuant to the TCA, "the proper focus is on the conduct giving rise to the harm, specifically the conduct of the officers whose conduct cause the alleged harm, not the specific cause of action or causes of action alleged." *Nitsch v. City of El Paso*, 482 F.Supp.2d 820, 840 (W.D. Tex. 2007). Accordingly, while Garcia alleges negligence and gross negligence claims against the Department, these claims must still satisfy the conditions for waiver of immunity established under the TCA—which again,

"provides for governmental liability based on respondeat superior for the misuse by its employees of tangible personal property." *DeWitt*, 904 S.W.2d at 653. If Officer Defendants are entitled to official immunity related to their arrest of Garcia—i.e. for their alleged misuse of handcuffs—then the Department too can avail itself of this affirmative defense with respect to claims arising out of this same conduct.[4] As the Texas Supreme Court held in analyzing liability waivers under the TCA, and § 101.021(2) in particular, any other outcome would subvert the statute's meaning, as "[i]t would serve no legislative purpose to declare a waiver of sovereign immunity when the basis of liability is respondeat superior and the acts of the employee are covered by official immunity." *Id.* at 654.

For the foregoing reasons, the Court finds the Department is entitled to sovereign immunity, and hereby **DISMISSES** Garcia's claims against the Department.

### III. Conclusion

For the foregoing reasons, the Court hereby:

- **GRANTS** Defendants' Motion to Dismiss, Dkt. No. 42;

- **DENIES** Plaintiff's Opposed Motion for Leave to File a Third Amended Complaint, Dkt. No. 49;

- **GRANTS IN PART AND DENIES IN PART** Defendants' Opposed Motion to Strike Plaintiff's Expert, Dkt. No. 52;

- **STRIKES AS MOOT** Defendants' Motion for Summary Judgment, Dkt. No. 55;

- **STRIKES AS MOOT** Plaintiff's Objection to Summary Judgment and Opposed Motion for Continuance, Dkt. No. 58;

---

[4] To the extent Garcia attempts to plead his claims arise out of prior conduct, such as the Department's issuance of handcuffs to Officer Defendants, this attempt fails too. *See Nitsch*, 482 F.Supp.2d at 840-41 (noting that if claims arise out of conduct committed prior to an officer's conduct causing a plaintiff's injury, "the claims avoid the [TCA's] intentional tort exception but no longer satisfy the waiver's requirement that the claim involve the use of government property.")

- **GRANTS** Plaintiff's Motion for Leave to Exceed Page Limitations, Dkt. No. 59; and
- **STRIKES AS MOOT** the parties' Joint Motion for a Continuance, Dkt. No. 63.

The Court further finds it lacks jurisdiction over the remaining claims in the above-captioned case, and so **DISMISSES** this case.

It is so ORDERED.

SIGNED this 11th day of July, 2017.

_____
Hilda Tagle
Senior United States District Judge